IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ZIPWALL, LLC,

Plaintiff

v.

C & S MANUFACTURING INC.,

Defendant.

Civil Action No.: 04-CV-10079 (REK)

**OPPOSITION TO MOTION TO**
**EXTEND TO THE TIME TO FILE A RESPONSIVE PLEADING**

Plaintiff ZipWall, LLC ("ZipWall") hereby opposes the motion by C&S Manufacturing, Inc. ("C&S") for an additional two-week extension of time (a first two-week extension having already been agreed to by ZipWall, but not actually requested by C&S) to answer or otherwise respond to the Complaint.

ZipWall opposes and requests that the Court set a hearing at its earliest convenience to discuss a fair resolution.

**Background**[1]

**The Parties.**

Plaintiff ZipWall is located in Massachusetts and makes and sells a patented product, in the form of a pole that can be used to hold up temporary plastic partitions to isolate dust during construction. ZipWall has enforced its patent in the past. Most recently, ZipWall filed suit against a company that admitted it had no valid defense and agreed to a Consent Judgment.

[1] As C&S did in its opening brief, ZipWall offers these facts in the motion only. At the Court's request, ZipWall will provide support for these facts in the form of documents, affidavits, or testimony.

C&S Manufacturing has a principal place of business in Illinois, but sells products nationally. According to C&S's public records, the president of C&S is Willard Strom and the Vice President is Virginia Strom (his wife).

C&S does business nationally and has sold sufficient products in Massachusetts (including to ZipWall) for there to be general personal jurisdiction here. C&S's principal place of business is also the private residence of its president and vice president, Mr. and Mrs. Strom (together the "Stroms").

**Illinois litigation.**

C&S is not a stranger to litigation or bankruptcy. Mr. Strom declared bankruptcy in 2001. A separate patent litigation against C&S Manufacturing and the Stroms as individuals is also now pending in the Northern District of Illinois, Barnett, et al. v. Strom, et al., No. 1:02cv3747. The Court in Illinois has entered summary judgment of infringement, entered an injunction barring further infringement by all, and recently issued an order to show cause as to why it should not hold the three defendants in contempt for violating that order.

On Monday, March 8th or Tuesday March 9th (immediately after C&S filed its motion for extension of time in this case, claiming that C&S would file for bankruptcy on March 16) a hearing was held in the Illinois case. Counsel for the Illinois Plaintiff has informed the undersigned that, at that hearing, the Illinois Court (Judge Shadur) informed C&S's counsel that the Court would take up the contempt and injunction matters against the Stroms as individuals even if C&S filed for bankruptcy and that the Illinois Court would not allow a bankruptcy proceeding to be used to circumvent its injunction. Counsel for the Illinois Plaintiff also related that, when Judge Shadur inquired about the status of a filing, C&S's lead counsel (Mr. Grossman, the same as lead counsel in the present case) informed the Court that he did not know

if a bankruptcy filing would or even could be made – that it was still be considered.

**The dispute between ZipWall and C&S.**

C&S makes a product ("SnapWall") that is used for the identical application, and marketed to the same customers, as the patented (and registered trademark) ZipWall product. SnapWall is (in ZipWall's view) an inferior product. It is also cheaper. Recently, ZipWall experienced price erosion at a trade show – a specific request for lower prices in order to compete with C&S's product.

An outline of the history of the dispute, including C&S's requests for extension of time, is as follows:

| | |
|---|---|
| January 9, 2004 | ZipWall filed its Complaint for patent and trademark infringement; ZipWall sends to C&S with a cover letter asking C&S to cease and desist |
| January 18 | C&S's patent attorney, John Gealow, acknowledges receiving Compaint from client, but denies infringement. |
| January 31 | Complaint served on C&S at its principal place of business and private residence of its two officers. The Complaint was accepted by a woman who answered the door on this Saturday morning (no one having answered the day before). |
| February 3 | ZipWall left a voicemail for Mr. Gealow stating that the Complaint had been served and that ZipWall would be filing for a preliminary injunction to stop price erosion, absent C&S's agreement to cease and desist. |
| February 9 | Mr. Gealow e-mailed ZipWall's counsel, stating that he was meeting with his client and litigation counsel on February 10, 2004 |
| February 18 | ZipWall's counsel received a call from Lee Grossman, stating that he had just become involved and requesting a thirty day extension. He claimed that service had not been properly made (although he could not explain who answered the door and accepted the Complaint), but proposed waiving any objection to service in exchange for the 30 day extension. Bankruptcy was not mentioned. |

| | |
|---|---|
| February 20 | ZipWall's counsel responded that 30 days was too long in view of price erosion and ZipWall's desire for a preliminary injunction, that two weeks would likely be acceptable, but that ZipWall's counsel would need to confer with the client (who was unavailable that week). ZipWall proposed agreement on a one-week extension with the understanding that a second week of time would likely be forthcoming once the client returned. Mr. Grossman stated that he would instead have people work over the weekend and file "a motion" on Tuesday (February 24th); no such motion was filed. Bankruptcy was never mentioned. |
| February 23 (Monday) | ZipWall's counsel sent an e-mail and left a voicemail confirming the second week of the extension. |
| March 3 | Again two days before the due date, ZipWall's counsel received a call from another lawyer, Ms. Traficanti, who identified herself as local counsel for C&S. She said that she had that day become involved in the case and would like a two week extension. She did not explain why local counsel needed two weeks to get "up to speed". Again, no mention of impending bankruptcy was made. Counsel for ZipWall explained that an extension had already been agreed on, there was a need for speed, and C&S's lawyer (Gealow) had a copy of the complaint for almost two months. |
| March 3 | ZipWall offers (in writing) to agree to the extension provided that C&S:<br>(a) waives its insufficiency of service defense (a waiver originally offered by C&S's counsel in exchange for an extension),<br>(b) provides ZipWall with a sample (earlier promised but never provided),<br>(c) agrees to meet and confer on preliminary injunction motions and any motion to be filed in lieu of an answer, and<br>(d) there would be no further requests for extensions. |
| March 5 | Having heard nothing, ZipWall asks if there is agreement. |
| March 9 | ZipWall receives C&S's motion for additional time and, for the first time, learns that C&S intends to file for bankruptcy. |

**Argument**

There are a great many inaccuracies in C&S's opening brief. For example, ZipWall did not demand that C&S waive any personal jurisdiction defense. Quite the opposite, ZipWall's written (e-mailed) proposal on March 3 asked for a waiver of a service defense. This defense could be obviated by a pointless re-serving of the Complaint, but so far and to date, C&S has never identified what woman answered the door at C&S's principal place of business and private residence of its officers on a Saturday morning (January 31), if not C&S's Vice President Mrs. Strom. That e-mail also requested only a meet-and-confer on the personal jurisdiction defense –

the antithesis of a request for waiver.

Another inaccuracy is the fact of an adequate meet-and-confer. C&S never mentioned the possibility of a bankruptcy filing – ZipWall first learned of it in C&S's moving papers.

Another inaccuracy is the suggestion that counsel only recently received a copy of the Complaint. The Complaint was in Mr. Gealow's hands on January 9 (acknowledged on January 18) and in Mr. Grossman's hands (almost certainly) on February 10 – the day he apparently met with Mr. Gealow.

More important than bickering over who did what when, however, is what the Court should do to achieve the "just, speedy and inexpensive" resolution of this action.

The answer to this question requires that C&S be forthcoming about its defenses and whether it will in fact file for bankruptcy. It may be, for example, that ZipWall would rather have this case dismissed (without prejudice) than have it stayed during bankruptcy, potentially for years, with an insufficient service defense pending. On the other hand, if no bankruptcy filing is made, ZipWall may wish to file a preliminary injunction motion (or in the alternative, request an expedited trial date) with this Court. In short, the appropriate resolution of this matter and this motion requires consultation and thought on matters about which C&S has not been forthcoming.

For example, ZipWall spoke to one attorney (Mr. Grossman) and then another (Ms. Traficanti), sequentially requesting time "to get up to speed" – not time to make a bankruptcy filing. When the motion for an extension was made, the grounds shifted.

On Friday, March 5th, C&S informed this Court that it needed an extension to file for bankruptcy – news to ZipWall's counsel – and that the filing was imminent and should be made on March 16. The following Monday, C&S apparently informed a Court in Illinois that it was

unclear whether C&S would or could file for bankruptcy. Now, March 16 has come and gone, and no bankruptcy filing was made.

During all this time, C&S is presumably continuing to specifically target sales of "SnapWall" to ZipWall's customers, at a much reduced price. The risks imposed by price erosion continue to mount as C&S moves from one tactic to another to secure delay.

Indeed, there is a substantial risk that a bankruptcy petition would be filed as a way to circumvent this Court's ability to address C&S's infringement in a timely manner. The Illinois Court apparently reached this conclusion, expressing its intent to proceed against the Stroms individually even if C&S did declare bankruptcy.

The best path for a just, speedy and inexpensive resolution of this action (Fed. R. Civ. P. 1) requires information that C&S has not to date reliably provided. To preserve the goals of Rule 1, C&S should come before the Court and explain its intentions (on the record), and do so before it makes a bankruptcy filing.

**Conclusion**

For the foregoing reasons, ZipWall respectfully requests that C&S's motion for an extension of time to respond to the complaint be DENIED and that this Court instead:

(a) set a status hearing for as soon as practicable for the Court;

(b) order C&S to be prepared to discuss at the hearing any insufficiency of service defense and whether it will in fact file a petition for bankruptcy; and

(c) order C&S not to file a petition for bankruptcy until after this hearing.

Respectfully submitted,

ZIPWALL, LLC

March 19, 2004

by: ____________________

Matthew B. Lowrie, BBO No. 563,414
Aaron W. Moore, BBO No. 638,076
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street - 11th Floor
Cambridge, MA 02142
Tel : 617-395-7000
Fax: 617-395-7070

**CERTIFICATE OF SERVICE**

It is hereby certified that a copy of the foregoing was served by first class mail on Tina M. Traficanti, Esq., Robins, Kaplan, Miller & Ciresi L.L.P.,Suite 1300, 111 Huntington Avenue, Boston, MA 02199, on this 19th day of March, 2004.

____________________
Aaron W. Moore